## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

ANGELA IRBY, individually and on behalf of her minor daughters,
K. I (1), a minor child, and K. I. (2), a minor child;
LAZHANTE ANDERSON; and TODD LOPEZ,
as wrongful death personal representative for
WILLIAM IRBY, deceased,

      Plaintiffs,

v.                                    No. 2:24-cv-0094-SMD-JHR

JEFFERSON INSURANCE COMPANY,
a New York corporation; and
AGA SERVICE COMPANY, d/b/a
ALLIANZ GLOBAL ASSISTANCE,
a Virginia corporation,

      Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL [DOC. 67] AND GRANTING PLAINTIFFS' MOTION TO EXTEND [DOC. 96].

This matter is before the Court on Plaintiffs' Motion to Compel Re: Rule 30(b)(6) Deposition of Defendants and Production of Net Worth Documentation filed April 1, 2025. [Doc. 67]. Defendants filed a response on April 15, 2025 [Doc. 74], and Plaintiffs replied on May 9, 2025 [Doc. 78]. Having reviewed the briefing, the record, and the relevant law, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' motion to compel and will allow the deposition to be reopened subject to the requirements of this Order. Having found good cause to extend case management deadlines, the Court also GRANTS Plaintiffs' motion to extend [Doc. 96].

## I.      BACKGROUND

### A.    Factual and Procedural History.

The parties' accounts of the factual history vary but the parties agree on the following events. This matter arises from the death of Mr. Irby following Mr. and Mrs. Irby's vacation to

Turks & Caicos Islands in November 2021. [Doc. 28, at 2]. After contracting the COVID-19 virus while in Turks & Caicos, Mr. Irby was transported by an air ambulance to Jackson Memorial Hospital in Florida on November 10, 2021. *Id.* He died at Jackson Memorial Hospital on December 17, 2021. *Id.* Plaintiffs filed this lawsuit on December 14, 2023. *Id.*

Plaintiffs bought emergency medical evacuation coverage of $250,000 before traveling to Turks & Caicos. *Id.* They say Mr. Irby "was medically ordered to be evacuated off-island to a facility that could treat his unique and dangerous condition (Covid infection of a prior heart transplant patient)." *Id.* Mrs. Irby allegedly begged Defendants to evacuate Mr. Irby "from November 6th into the morning hours of November 10th—while [Defendants] ignored her and [Mr. Irby] deteriorated." *Id.* Mrs. Irby allegedly embarked on a "horrific bureaucratic quest" speaking with indifferent representatives of Defendants such that "[b]y the time [Defendants] evacuated [Mr. Irby] to the United States on November 10th (over four days after the claim was opened), it was too late" for necessary medical intervention. *Id.* at 3. Plaintiffs thus claim Mr. Irby died "as a direct result of [Defendants] unreasonable and reckless conduct." *Id.*

On the other hand, Defendants explain that Mr. Irby "went to the InterHealth Canada Turks and Caicos Islands Hospital shortly after midnight on November 6, 2024, and was diagnosed with: 'Likely mild case of COVID.'" *Id.* at 4, 5. Defendants cite hospital records stating that Mr. Irby refused intravenous medication, blood tests, and hospital admission and left the hospital two hours after arrival. *Id.* at 5. Plaintiffs allegedly called Defendants "over ten hours after they left the hospital," at which point Defendants' medical personnel did not deem Mr. Irby qualified for medical evacuation. *Id.* On November 8, 2021, Plaintiffs called again and were advised to return to the Turks & Caicos hospital, which they did the following day. *Id.* Defendants were then able to learn about Mr. Irby's condition as he "had finally chosen to be treated by medical personnel."

*Id.* Only at that point, Defendants say, were they able to transport Mr. Irby back to the United States "in just less than 24 hours" despite "the myriad of complexities of arranging an international emergency evacuation." *Id.* After Mr. Irby's admission to the "step down" unit, rather than the intensive care unit proper at Jackson Memorial Hospital, Defendants allege Plaintiffs severed contact and Defendants did not learn of Mr. Irby's passing until plaintiff's counsel served a demand letter on June 9, 2022. *Id.* at 6; [Doc. 28-2, at 4].

**B.    Procedural History.**

Plaintiffs filed their lawsuit on December 14, 2023, in the First Judicial District Court of New Mexico alleging claims of breach of contract, bad faith, violation of the New Mexico Insurance Practices Act and Unfair Practices Act, negligent, intentional, willful, or reckless misconduct resulting in wrongful death, and loss of consortium. [Doc. 1-2]. Defendants removed the matter to this Court on January 30, 2024, [Doc. 1] and filed an answer on February 6, 2024 [Doc. 9]. After presiding Judge Margaret Strickland denied Defendants' partial motion to dismiss [Doc. 26], the Court issued its original scheduling order on July 31, 2024 [Doc. 32].

The Court held two informal discovery conferences [Docs. 54, 64] before Plaintiffs filed the instant motion to compel on April 1, 2025 [Doc. 67]. On May 15, 2025, the Court granted Plaintiffs' second unopposed motion to extend deadlines which set the operative case management deadlines: June 10, 2025, for Plaintiffs' expert deadline; August 11, 2025, for Defendants' expert deadline; October 27, 2025, for termination of discovery; November 3, 2025, for discovery motions; and February 16, 2026, for pretrial motions. [Doc. 83]. Plaintiffs have since filed three opposed motions to extend deadlines [Docs. 85, 89, 96] which the Court will resolve in this Order.

**C.    Briefing Summary.**

1.    <u>Plaintiffs' Motion to Compel.</u>

The motion concerns several disputes over the subjects and scope of Plaintiffs' Rule 30(b)(6) deposition of Defendants' corporate representative Chad Tinsley on February 5, 2025. [Doc. 67-1]. Plaintiffs allege "serious problems" with Tinsley's responses, chiefly:

1. Tinsley's "inability and/or refusal to testify to the Defendants' rules, policies, procedures, and guidelines related to medical evacuation claims in place in 2021";
2. Speaking objections regarding the notice of the Rule 30(b)(6) deposition, "signaling to the witness to not answer questions related to rules, policies, procedures, and guidelines for medical evacuation claims in 2021";
3. Tinsley's "assertion of attorney client privilege and refusal to answer questions seeking claim-handling information";
4. Tinsley's generally nonresponsive testimony; and
5. Tinsley's "inability to answer questions about how the companies' net worth was calculated."

[Doc. 67, at 2]. These issues prompt Plaintiffs to claim that Tinsley's inadequate preparation amounted to a failure to appear such that the Court should reopen the Rule 30(b)(6) deposition for three hours at Defendants' expense. *Id.* at 2–5. Plaintiffs additionally request documentation explaining Defendants' net worth numbers and sanctions under Rule 30(b)(6) for production of an unprepared witness. *Id.* at 3, 5.

Plaintiffs argue the questions regarding Defendants' policies, procedures, and training manuals fit within topics 29, 30, and 31 outlined in the deposition notice:

29.    YOUR policies, procedures, guidelines, and/or rules related to Emergency Transportation Coverage and/or Emergency Evacuation Coverage under YOUR policies in effect at the time of the INCIDENT.
30.    YOUR policies, procedures, guidelines, and/or rules related to coverage under YOUR epidemic coverage endorsements in effect at the time of the INCIDENT;
31.    YOUR internal standards, and knowledge of industry standards, pertaining to the handling of travel insurance claims in effect in November 2021.

[Doc. 67, 6]. Specifically, Plaintiffs complain that Tinsley improperly ducked questions about training manuals containing the written policies and procedures. *Id.* at 10, 11. Plaintiffs include deposition excerpts to support this point. *Id.* at 10–12. The excerpts reflect Tinsley's answers

repeatedly emphasizing his inability to "validate" the training manuals used for evacuation claims in 2021. *See id.* Defense counsel objected that Plaintiffs did not list the training manuals on the notice as fair game for questioning, which Plaintiffs critique as a disingenuous avoidance tactic. *Id.* at 9. Plaintiffs instead frame the training manual questions as relating to the topic asking about "Defendants' rules, policies, procedures, and guidelines relating to the handling of emergency medical evacuation claims that were in place in 2021" in the notice. *Id.* Plaintiffs explain the training manuals are "highly relevant" to their insurance bad faith claim. *Id.* at 13 (collecting cases). Plaintiffs accuse Defendants of "significantly hamper[ing] Plaintiffs' ability to obtain information" relating to the 2021 manuals. *Id.* at 14.

Plaintiffs next challenge Tinsley's assertion of attorney client privilege and "refusal to answer questions seeking claim-handling information." *Id.* Plaintiffs were frustrated that Tinsley invoked privilege for questions about Defendants' ongoing insurance claim investigation. *Id.* at 15. Plaintiffs claim that Topics 1, 2, 3, 17, and 18 in the notice cover questions related to claim investigation and coverage, and in any event, the "questions posed did not implicate disclosure of attorney-client communications." *Id.* at 17. The law governing the privilege, Plaintiffs assert, "does not render the facts themselves privileged." *Id.* (collecting cases). For example, Plaintiffs cite questions asking about claim handlers or claim notes as implicating non-privileged facts to which Tinsley should have testified. *Id.* at 17–18.

Lastly, Plaintiffs complain of Tinsley's alleged "refusal to answer simple questions" and similarly nonresponsive answers. *Id.* at 18. Plaintiffs cite a certain exchange over the medical evacuation and "whether the 'conditions' for coverage under the Policy had been met" to illustrate their frustration with Tinsley. *Id.* at 19–21. Tinsley repeatedly answered to the effect that Defendants "had the necessary information in that point in time to evacuate [the decedent]." *Id.*

Plaintiffs claim these responses "materially deprived [them] of information to which they are entitled," necessitating a reopening of the deposition. *Id.* at 22.

Plaintiffs also move the Court to compel production of net worth documentation. *Id.* Plaintiffs were dissatisfied with the "bare totals for [Defendants'] estimation of net worth" because the totals did not include calculations or similar information. *Id.* Thus, they say Defendants should have to produce "annual reports and financial statements that back their claims of net worth" a week prior to the reopened deposition. *Id.* at 23.

For these reasons, Plaintiffs request several forms of relief:

(1) Reopening the 30(b)(6) deposition for three additional hours over Zoom;
(2) Ordering Defendants' representative to be "fully prepared" to testify to notice Topics 1, 2, 3, 15, 17, 18, 29, 30, and 31;
(3) Ordering Defendants' representative to respond directly to questioning;
(4) Ordering Defendants to pay for the costs of reopening the deposition; and
(5) Ordering Defendants to produce annual financial reports and statements supporting net worth calculations seven days prior to the rescheduled deposition.

*Id.* at 67.

2. <u>Defendants' Response.</u>

Defendants characterize the Rule 30(b)(6) deposition as a "bait and switch" because Plaintiffs "all but ignored" the negotiated notice topics for which Tinsley had prepared. [Doc. 74, at 1]. Further, rather than asking about the 1,477 Bates-stamped pages listed in the notice, Defendants say Plaintiffs primarily asked "about 1,031 pages of documents never referenced in the controlling 30(b)(6) notice." *Id.* at 2. Defendants contend this tactic was intended to "bind the company to testimony on topics never listed in the notice." *Id.* Because Tinsley only prepared to testify to the topics and documents in the notice, Defendants protest that Plaintiffs' "motion to compel erroneously complains that [Tinsley] was not prepared to speak on topics." *Id.* Defendants ask the Court to deny the motion and impose costs against Plaintiffs. *Id.*

6

Defendants urge that the parties' negotiations and preparations prior to the deposition support their position. After Plaintiffs submitted their proposed Rule 30(b)(6) notice, the "lack of clarity" surrounding which documents the notice encompassed prompted conferral on the specific Bates-stamped pages to include in the notice. *Id.* at 3. The parties agreed to 1,477 Bates-stamped pages and other revisions to formulate the final 30(b)(6) notice. *Id.* Defendants describe Tinsley's preparation to include meeting with "numerous people at AGA," reviewing the 1,477 documents in the notice, and listening to the 90 calls also listed in the notice, which was interrupted by Plaintiffs' service of an amended notice listing over 900 additional pages three business days before the deposition. *Id.* at 4. Defendants immediately objected and told Plaintiffs they would "move forward with the properly noticed deposition subject to their prior objections, but not the amended deposition notice." *Id.*

Defendants now argue that Plaintiffs "all but ignored the operative Rule 30(b)(6) deposition notice" and instead spent "the vast majority of the deposition discussing topics that were listed in the untimely and invalid notice." *Id.* Compounding Defendants' dissatisfaction was Plaintiffs' counsel's excuse that the questions were properly encompassed by "topics that had never been noticed with any particularity." *Id.* Defendants complain the resulting deposition was "untethered" from the properly noticed topics as evidenced by Plaintiffs' reliance on voluminous exhibits from the amended notice to the exclusion of those listed in the original notice. *Id.* at 5–6. Without noticing the topics of assistance and medical training manuals with particularity, Plaintiffs extensively probed them while questioning Tinsley. *Id.* at 5. Defendants say these tactics forced counsel to "constantly object" to scope but deny advising Tinsley not to answer. *Id.*

Defendants make four arguments that the operative deposition notice topics "bore no resemblance to the deposition Plaintiffs' counsel attempted to take." *Id.* at 6. First, Defendants

contend the "amorphous" questions on training manuals and policies were insufficiently noticed, cumulative, and unable to be cured by post-hoc rationalization. *Id.* They explain the questions about training manuals are cumulative because eight prior witnesses were already "questioned extensively" about them and so a ninth witness is unnecessary. *Id.* at 7. They further assert that the training manuals should have been referenced specifically in the deposition notice both in the language of the notice and in the Bates-stamped page numbers. *Id.* at 7–8. They argue Plaintiffs' attempt to categorize the training manual questions under Topics 29, 30, and 31 does not change the fact that "training manuals" were never mentioned in any of those topics. *Id.* at 9, 10. They also explain the difference between insurance coverage claims, the subject of Topics 29, 30, and 31, and the assistance services Plaintiffs utilized but did not mention in the notice. *Id.* at 10.

Second, Defendants argue Tinsley's claims of attorney-client privilege were proper for two reasons. *Id.* at 11. First, the ongoing claim investigation for which Tinsley invoked privilege "was explicitly removed as a 30(b)(6) topic during the negotiations" and therefore not properly in the scope of the deposition. *Id.* at 11, 12. Next, questioning on the current claim litigation is improper because Plaintiffs did not originally submit claim documentation for the incident. *Id.* at 12. Regardless, Defendants say attorney-client privilege protects their present discussions and decisions related to ongoing claim litigation. *Id.* at 12. Thus, "the motion to compel does not and cannot require Mr. Tinsley to provide information that he gained through discussion with counsel." *Id.* at 13.

Third, Defendants discount Plaintiffs' complaint with Tinsley's answers. *Id.* They defend that as a corporate representative, Tinsley had no obligation to answer improper questions on Defendants' legal positions. *Id.* They counter that Plaintiffs' "abusive depositions tactics"—such as repetitive, complex, and poorly phrased questions and criticisms from counsel—were improper.

*Id.* at 14. Therefore, Plaintiffs prolonged the deposition by asking novel questions and then "trying to cobble together five different topics to somehow make the questions on point." *Id.* at 15.

Fourth, Defendants argue the net worth inquiry was improper and Tinsley's answers comported with the original notice topic. *Id.* They initially explain the pertinent notice topic only required net worth information "presently and as of November 10, 2021," which Tinsley was prepared to answer. *Id.* 15, 16. Plaintiffs demanding annual reports and financial statements exceeds the controlling notice, Defendants say, a troublesome move after the parties reportedly agreed to remove the "financial condition" phrase in this topic. *Id.* at 16. Defendants rely on New Mexico law that only the net worth figure is discoverable under the "weight of authority in this district." *Id.* at 16–17 (collecting cases).

3.  <u>Plaintiffs' Reply.</u>

The reply denounces Defendants' narrative as "heavy on distraction but light on substantive replies" and accuses Defendants of "weaponizing" the notice conferral process. [Doc. 78, at 1, 2]. Plaintiffs say the "real issues" for the Court are whether Defendants were on notice that their policies, procedures, rules, guidelines and manuals were properly deposition topics for which Tinsley should have prepared. *Id.*  at 9, 10. They again challenge Tinsley's reliance on attorney-client privilege and general evasion. *Id.* 10, 11. Finally, Plaintiffs provide case law to show that financial information beyond the bald figure of a company's net worth is discoverable. *Id.* at 12.

## II.    <u>LEGAL STANDARDS</u>

Rule 30(b)(6) allows a party to notice the deposition of a corporation as follows:

In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. Before or promptly

after the notice or subpoena is served, the serving party and the organization must confer in good faith about the matters for examination. A subpoena must advise a nonparty organization of its duty to confer with the serving party and to designate each person who will testify. The persons designated must testify about information known or reasonably available to the organization.

Fed. R. Civ. P. 30(b)(6).

The corporation on notice must prepare its designee to answer the questions on the relevant topics "fully, completely, [and] unevasively" *Gulfstream Worldwide Realty, Inc. v. Philips Elecs. N. Am. Corp.*, No. 06-cv-01165, 2007 WL 5704041, at *4 (D.N.M. Oct. 24, 2007) (quoting *United States v. Magnesium Corp. of Am.,* No. 01-cv-00040, 2006 WL 6924985, at *4 (D. Utah Nov. 27, 2006)). Thus, the designee has a duty to prepare and educate himself on information available to the corporation even if he does not have personal knowledge on the matter. *Id.* This preparation involves investigating the relevant facts by "collect[ing] information, review[ing] documents, and interview[ing] employees with personal knowledge." *Id.* The designee's answers are binding on the corporation. *Id.* The entity must make a "good faith effort" to designate a representative "knowledgeable and well informed in most areas of inquiry," but "absolute perfection" is not required. *Rains v. Westminster Coll*., No. 20-cv-00520, 2023 WL 2504729, at *4 (D. Utah Mar. 14, 2023). Consequently, "[t]he mere fact that a designee [can] not answer every question on a certain topic does not necessarily mean that the corporation [has] failed to comply" with its Rule 30(b)(6) obligation. *Id.*

## III.    ANALYSIS

### A.    The Original Notice Controls Because the Amended Notice Was Untimely.

#### 1.    Relevant law.

Rule 30(b)(1) requires parties to give each other "reasonable notice in writing" of taking an oral deposition. Fed. R. Civ. P. 30(b)(1). The circumstances of each case govern whether notice

is reasonable. *Gulfstream*, 2007 WL 5704041, at *5–6 (collecting cases). For example, ten business days has been found unreasonable where the matter is "exceedingly complex" making it unlikely attorney schedules could accommodate the depositions "virtually hours before the discovery cut-off." *Id.* (quoting *In re Sulfuric Acid Antitrust Litigation,* 231 F.R.D. 320, 327 (N.D. Ill. 2005)). However, eight days' notice was reasonable where the deponent's fragile physical condition "was serious enough to prevent him from appearing at trial." *Id.* (citing *Jones v. United States,* 720 F. Supp. 355, 366 (S.D.N.Y. 1989)).

The District of New Mexico's local rules require fourteen days' notice prior to a deposition. D.N.M.LR-Civ. 30.1 ("Service of notice of deposition in accordance with Fed. R. Civ. P. 30(b) must be made at least fourteen (14) days before the scheduled deposition"). This fourteen-day period "may be shortened by agreement of all parties of by Court order." *Id.* The Tenth Circuit has affirmed that local rules have the force of law and are binding on the parties. *Gulfstream*, 2007 WL 5704041, at *5–6 (citing *Smith v. Ford Motor Co.,* 626 F.2d 784, 796 (10th Cir. 1980)).

2. Application.

The Court finds that the amended notice is not timely and therefore Defendants did not err in disregarding it. Plaintiffs served their amended notice on January 31, 2025, five days—or three business days—before the February 5, 2025, deposition. [Doc. 74-3, at 1, 14]. Less than a week's notice certainly violates this Court's local rules. While this is sufficient basis to disregard the amended notice, the Court also finds three business days fails to comply with Rule 30(b)(1)'s reasonable notice requirement. The multiple dates, jurisdictions, companies, and insurance levels involved in this matter present complexities which necessitate more than five days' preparation for a deposition of such consequence. *See Gulfstream*, 2007 WL 5704041, at *5–6. Therefore, the original notice controls.

11

**B.      The Original Notice Did Not Give Sufficient Particularity on the Disputed Issues of Defendants' Training Manuals, Policies, and Procedures.**

1.   Relevant law.

The notice of a Rule 30(b)(6) deposition must specify the areas of inquiry with "reasonable specificity" or particularity. Fed. R. Civ. P. 30(b)(6). The Tenth Circuit has interpreted "reasonable particularity to mean 'sufficiently definite and limited in scope that it can be said to apprise a person of ordinary intelligence' of the request," which "depends at least in part on the circumstances of each case." *Rains*, 2023 WL 2504729, at *4 (citing *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649–50 (10th Cir. 2008)). Courts differ on what "reasonable particularity" means in the Rule 30(b)(6) context. Some construe it to mean the noticed topics must be described with "painstaking specificity," while others impose the less strenuous construction of "whether [a noticed topic] places the [deponent] upon reasonable notice of what is called for and what is not." *City of Las Cruces v. United States*, No. 17-cv-00809, 2022 WL 704123, at *4–5 (D.N.M. Mar. 9, 2022) (collecting cases for both versions).

Where the party producing the Rule 30(b)(6) designee "cannot identify the outer limits of the areas of inquiry notice," a court may find the notice overly broad because it "subjects the noticed party to an impossible task." *Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000). For example, a notice stating the listed topics of inquiry are not exclusive—such as with language indicating the areas of inquiry "include, but not be limited to" the enumerated topics— is overly broad. *Id.* A notice which provides "illustrative" but not "exhaustive" questions within the noticed topics similarly fails to comply with the reasonable particularity requirement. *City of Las Cruces*, 2022 WL 704123, at *4. Such notices are insufficient under Rule 30(b)(6) because they fail to put the designee on notice of the "full extent of their preparatory obligations." *Id.*

2.   Application.

The Court is not persuaded that Topics 29, 30, and 31 in the original notice sufficiently advised Defendants that training manuals with written procedures fell under their scope. For example, Plaintiffs asked Tinsley about training manuals, which Plaintiffs marked as exhibits to the deposition. *See* [Doc. 67, at 11–12]. However, the relevant Bates-numbered pages for these manuals were not included in the deposition notice for these topics (despite citations to many other documents under previous topics). *See* [Doc. 74-3, at 4-9]. Thus, Defendants' chart of the exhibits referenced in Tinsley's deposition is correct insofar as the training manuals were "new exhibits" at the deposition not listed in the original notice. [Doc. 74-5, at 1]; *compare* [Doc. 68-2] (original notice), *with* [Doc. 74-2, at 2] (amended notice).

Plaintiffs' argument that Topics 29, 30, and 31 encompass questioning on training materials treats their topics as "illustrative" but not "exhaustive" of what questions they could pose. Without proper reference to relevant Bates-numbered material, the topics at issue subjected Tinsley to the "impossible task" of searching and preparing to answer for every document that might apply to the generally phrased topics. *See* [Doc. 68-2, at 12]; *Reed*, 193 F.R.D. at 692.

Thus, the notice did not describe Topics 29–31 with "painstaking specificity" nor gave "reasonable notice" of what testimony was called for. It is reasonable that Tinsley prepared by reviewing the documents cited in the notice instead of guessing what unmentioned documents Plaintiffs might rely on. For example, Tinsley's confusion about whether the question on evacuation claims referred to insurance benefits or assistance services demonstrates why that notice topic required more specificity than was given. *See* [Doc. 67, at 11]. In sum, Tinsley was not wrong to refrain from testifying when asked about the 2021 training manuals and policies not cited in the notice and thus not reviewed in deposition preparation.

13

C.    **The Current Claim Status Was Not Properly Noticed for the Deposition, but the Attorney-Client Privilege Does Not Apply to the Facts Regarding Ongoing Claim Litigation.**

1.    <u>Relevant Law.</u>

The attorney-client privilege is narrow and not a "catch-all exception" to the broad principle of liberal discovery. *Sanchez v. Matta*, 229 F.R.D. 649, 655–56 (D.N.M. 2004). The purpose is to encourage clients to fully disclose all information to counsel. *Fisher v. United States*, 425 U.S. 391, 403 (1976). State law governs attorney-client privilege in diversity cases. *Anaya v. CBS Broad., Inc.*, 251 F.R.D. 645, 650 (D.N.M. 2007) (citing Fed. R. Civ. P. 501 and *Frontier Refining, Inc. v. Gorman–Rupp Co., Inc.*, 136 F.3d 695, 699 (10th Cir.1998)). In New Mexico, the privilege applies to "confidential communications made for the purpose of facilitating the rendition of professional legal services to the client." *Id.* (citing *Bd. of Comm'rs of Dona Ana Cnty. v. Las Cruces Sun News,* 2003–NMCA–102, ¶ 25, 76 P.3d 36, 44); Rule 11-503(B) NMRA.

The privilege does not protect the underlying facts contained in communications between a client and attorney. *Upjohn Co. v. United States*, 449 U.S. 383, 395–96 (1981). Thus, the presence or involvement of an attorney—such as "channeling" work or communications through an attorney—does not automatically make a communication privileged. *Anaya*, 251 F.R.D. at 650 (citing *Motley v. Marathon Oil Co.,* 71 F.3d 1547, 1550–51 (10th Cir. 1995)); *Burton v. R.J. Reynolds Tobacco Co.,* 170 F.R.D. 481, 485 (D. Kan. 1997)). Accordingly, "[a]n in-house counsel's communications regarding business matters, management decisions, and business advice, which neither solicit or predominantly deliver legal advice, are not privileged." *Anaya*, 251 F.R.D. at 650 (citing 6 James Wm. Moore, *Moore's Federal Practice* § 26.49[4], at 26–182 (3d ed. 1997)). The communication must rather "relate to legal advice or strategy sought by the client." *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998), *cert. denied*, 525 U.S. 1088 (1999).

2. Application.

Plaintiffs are still bound by the limiting language of notice. Defendants explain that the parties negotiated to change the open-ended language "current and ongoing [claim] investigation" in the draft deposition notice to a time-bound topic about the "claim for emergency evacuation coverage from November 6, 2021, to November 23, 2021," as explicitly stated in Topics 1[1], 2[2], and 3[3]. [Doc. 74, at 11]; *compare* [Doc. 68-1, at 3] *with* [Doc. 68-2, at 3]. Topics 17[4] and 18[5] fare the same because the term "POLICY"[6] used therein refers to "the period of November 3, 2021, through the November 8, 2021." [Doc. 68-2, at 3, 10, 11].

Thus, notwithstanding the privilege question, Defendants argue the questioning into their current claim handling and investigation was not noticed and therefore improperly raised in the deposition. The Court agrees. Had the current claim status been properly noticed, Tinsley could not have used privilege as a reason to not answer the questions as explained below. But absent a specific topic alerting Tinsley to prepare for questions on the current claim, the Court will not find a violation of Rule 30(b)(6).

Assuming the current claim status had been included in the notice, the Court would find that the questions seeking information on Defendants' claim handling and investigation do not

---

[1]    Topic 1 asks "Steps that YOU, an/or ANYONE ACTING ON YOUR BEHALF, took to investigate the CLAIM for emergency evacuation coverage from November 6, 2021, to November 23, 2021." [Doc. 68-2, at 3].

[2]    Topic 2 asks "Decisions that YOU, and/or ANYONE ACTING ON YOUR BEHALF, made in connection with the CLAIM for emergency evacuation coverage from November 6, 2021, to November 23, 2021." *Id.*

[3]    Topic 3 asks "Steps that YOU, and/or ANYONE ACTING ON YOUR BEHALF, took to set up and carry out Mr. Irby's emergency evacuation from November 6, 2021, to November 23, 2021." *Id.*

[4]    Topic 17 asks "YOUR interpretation of the terms, benefits, and coverages provided by the POLICY and YOUR application of those terms to the CLAIM. This topic will focus on the following terms of the POLICY . . ." *Id.* at 10, 11.

[5]    Topic 18 asks "YOUR position regarding coverage under the POLICY for the CLAIM, and the bases therefor. This topic is limited to the Emergency Evacuation coverage, Repatriation of Remains coverage, Emergency Medical Coverage; and Travel accident—Death Benefit coverage." *Id.* at 11.

[6]    Number 13 of the notice's "Definitions" section states "'POLICY' means Jefferson policy number EUSP2226027765, for the period of November 3, 2021, through November 8, 2021, issued by Jefferson and Allianz to William and Angela Irby." *Id.* at 3.

primarily elicit information covered by attorney-client privilege. The deposition excerpts reflect that Tinsley invoked privilege in lieu of answering nearly all claim handling questions, such as who was investigating the claim, whether the claim investigation was active, whether the assistance department was investigating the evacuation claim, and whether there were updated case notes about the evacuation claim. [Doc. 67, at 15–16]. The answers to these questions are underlying facts in the case which do not solicit communications between Tinsley and in-house counsel made in confidence to seek legal advice or strategy. *See Anaya*, 251 F.R.D. at 650; Rule 11-503 NMRA. The fact that Tinsley may have learned the claim handling status and claim manager identities from in-house counsel does not make the information itself privileged.

**D.    Defendants Must Produce the Current Year's Tax Returns or Balance Sheets Supporting Their Net Worth Calculations.**

    1.    <u>Relevant law.</u>

If a plaintiff has alleged sufficient facts to claim punitive damages, information on the defendant's net worth or financial condition is relevant and discoverable. *EEOC v. Roark-Whitten Hosp. 2, LP*, No. 14-cv-00884, 2017 WL 3575731, at *7 (D.N.M. Aug. 17, 2017). While there is no bright-line rule for the number of years or format of net worth information a plaintiff is entitled to, courts have "routinely held that discovery of the defendant's wealth should be limited to the current year's balance sheet," financial statements, or tax return. *See Leal v. Ohio Sec. Ins. Co.*, No. 23-cv-01121, 2024 WL 3950833, at *3 (D.N.M. Aug. 27, 2024) (citing *Sanders v. Turn Key Health Clinics*, No. 17-cv-00492, 2021 WL 2413040, at *3 (N.D. Okla. June 14, 2021)) (balance sheets); *see also Gudelj v. Vitality Works, Inc.*, No. 19-cv-00014, 2019 WL 13302545, at *5 (D.N.M. Dec. 12, 2019) (independently reviewed financial statements); *Boyd v. Hi-Country Chevrolet*, No. 10-cv-0602, 2011 WL 13289889, at *2 (D.N.M. Mar. 10, 2011) (tax returns).

Only present net worth is relevant for determining punitive damages. *Tate v. Honeywell, Inc.*, No. 96-cv-00098, 2002 WL 35650081, at *6–7 (D.N.M. Feb. 19, 2002). At the upper end, three years' worth of net worth information has been ordered under unique circumstances where defendant was going out of business. *See id.* (citing *Philmar Dairy, LLC v. Armstrong Farms*, 2019 WL 2006181, at *2-3 (D.N.M. May 7, 2019)). Courts may prohibit the use or dissemination of financial information outside of the litigation at issue and require it to be returned at the close of litigation. *See Aguilar v. Aramark Corp.*, No. 97-cv-01481, 1998 WL 36030448, at *5 (D.N.M. Aug. 6, 1998); *Boyd*, 2011 WL 13289889, at *2.

    2. <u>Application.</u>

Because Plaintiffs claim punitive damages, Defendants' present net worth reflected in their financial documentation is relevant and discoverable. Defendants must produce their most recent net worth, presumably for 2025 or the 2024–2025 fiscal year. Regarding form, Defendants must produce the current year's balance sheets or tax returns, whichever is more readily available and/or feasible for production. Plaintiffs have not presented a compelling reason to order more at this juncture and must return the net worth document production to Defendants at the close of litigation.

**E.    Leave to Reopen the Deposition Is Granted for the Limited Purpose of Asking About the Issues Giving Rise to this Motion, Unless the Parties Otherwise Agree.**

    1. <u>Relevant law.</u>

Rule 30(a) requires leave of court to reopen a deposition, and in turn, requires the court to grant leave "to the extent consistent" with Rule 26(b). Fed. R. Civ. P. 30(a)(2)(A)(ii); *Clark v. Penn Square Mall Ltd. P'ship*, No. 10-cv-00029, 2013 WL 139778, at *1 (W.D. Okla. Jan. 10, 2013). Rule 26(b) outlines the parameters for discovery and directs courts to restrict discovery if:

       (1) the party seeking to reopen the deposition has had ample opportunity to obtain
       the information;

(2) the proposed discovery is unreasonably cumulative, duplicative, or obtainable with less expense or burden from other sources; or
(3) the burden of providing the discovery outweighs the likely benefit.

Fed. R. Civ. P 26(b)(2); *see Entrata, Inc. v. Yardi Sys., Inc.*, No. 15-cv-00102, 2018 WL 6171890, at *2 (D. Utah Nov. 26, 2018). Courts have cautioned against applying a good cause standard in this situation because it would "involve disregard of Rule 30(a)(2)(A)(ii) when its terms mandate leave for a second deposition." *Clark*, 2013 WL 139778, at *1; *Entrata*, 2018 WL 6171890, at *2.

2. Application.

After applying the strictures of Rule 26(b)(2), the Court grants leave to reopen the 30(b)(6) deposition.

The first factor does not weigh against reopening the deposition, because Plaintiffs have not had "ample" opportunity to obtain this testimony. Although Defendants say that Plaintiffs already asked previous witnesses about company policies, procedures, and training manuals and do not need more testimony on that topic, those were not Rule 30(b)(6) depositions binding on the company. *See* [Doc. 74, at 7]; [Doc. 78, at 6]. By the same token, the Court does not find that Defendants engaged in the "bandying" practice Plaintiffs complain of simply by virtue of prior witnesses not knowing the policies in effect during 2021. [Doc. 78, at 7, 8]. However, if properly noticed, a Rule 30(b)(6) deponent should and likely will become familiar with the policies, procedures, and training manuals operative in 2021.

Nor does the second factor weigh against another deposition. While reopening the 30(b)(6) deposition may be "somewhat cumulative or duplicative, it is not unreasonably so." *EEOC v. Holmes & Holmes Indus., Inc.*, No. 10-cv-00955, 2011 WL 6069306, at *3 (D. Utah Dec. 6, 2011). Indeed, it is reasonable because of the insufficient notice given prior to Tinsley's deposition which deprived Plaintiffs of satisfactory responses. The Court does not find the information more readily

obtainable from other sources given the purpose of a Rule 30(b)(6) deposition is to elicit such testimony on a company's behalf. Further, any cumulative efforts can still be timely accomplished because discovery deadline has not expired and the Court will extend it, as explained below.

Finally, the last factor does not weigh against reopening the deposition either. The burden affects both parties as Plaintiffs must first amend their notice with adequate specificity and document citations in order for Defendants to properly prepare their deponent. Given the relevance of policies, procedures, and training manuals to this breach of contract case, *see* [Doc. 1-2, at 31, 33], and the lack of foundational testimony on them, the Court does not foresee this issue resolving without more 30(b)(6) testimony.

**F.    The Court Finds Good Cause to Grant an Extension of Deadlines.**

Plaintiffs filed a series of motions to extend case management deadlines after filing the present motion to compel. [Docs. 85, 89, 96]. Defendants opposed. [Docs. 86, 91] (the response period has not passed for the most recent motion to extend, Doc. 96). The Court has reviewed the motions and responses and finds good cause to extend the deadlines. *See* Fed. R. Civ. P. 16(b). The time and effort a second pre-deposition conferral process will likely necessitate justifies an extension. The parties must confer on an amended notice, exchange drafts, and come to an agreement on satisfactory language and citations. The Rule 30(b)(6) deponent must then prepare based on the notice topics. Moreover, Defendants have recently filed a motion to compel [Doc. 92], which must also be addressed within the discovery deadline. Considering all these circumstances, the Court extends deadlines as follows:

1. Plaintiffs' Rule 16(a)(2) expert disclosure: September 5, 2025;

2. Defendants' Rule 26(a)(2) expert disclosures: October 6, 2025;

3. Plaintiffs' rebuttal experts, if any: 15 days from service of Defendants' expert reports;

4.  Termination for discovery: January 22, 2026;

5.  Motions relating to discovery: January 29, 2026.

The pretrial motions deadline remains February 16, 2026. [Doc. 83]. These deadlines account for presiding Judge Davenport's jury trial setting on September 21, 2026. [Doc. 66]. While the Court has accommodated deadline extensions to date, further extensions will begin to encroach upon pretrial dates. *See id.* The Court encourages the parties to collaborate to the best of their ability as further extensions may not be feasible.

**G.     Parameters for Plaintiffs' Second Rule 30(b)(6) Deposition.**

Having found that leave to reopen the deposition is required under Rule 30(a) and Rule 26(b), the Court must craft appropriate criterion for the second deposition. Plaintiffs request the Court order:

1.  Three additional hours of Rule 30(b)(6) deposition over Zoom;
2.  The deponent be "fully prepared to testify to [T]opics 1, 2, 3, 15, 17, 18, 29, 30, and 31";
3.  The deponent to "directly answer questions in a responsive manner";
4.  Defendants to pay costs and fees for the court reporter and videographer; and
5.  Defendants to produce annual financial reports and statements supporting their net worth calculations at least seven days before the rescheduled deposition.

[Doc. 67, at 23].  The Court will grant in part and deny in part Plaintiffs' requested relief.

Regarding the first request, the Court finds three hours excessive. The scheduling order caps depositions of parties and experts at seven hours and depositions of non-parties at five hours. [Doc. 32]. Three hours would be nearly half of the length of the longest permissible deposition. The Court will limit the second deposition to two hours over Zoom.

Regarding the second and third requests, the Court finds ordering the deponent to respond "directly" and to "fully" prepare to testify to nine discreet topics as written unworkable. After reviewing the briefings and attachments, the Court believes a more feasible remedy is to order the

parties to confer to formulate new notice topics directly addressing the issues in the first deposition, including Bates-numbered citations. For example, one topic inquiring into training manuals for assistance services, including medical evacuation, in effect during 2021, with Bates citations; a separate topic asking about policies and procedures for insurance claims adjudication in effect during 2021, with Bates citations; etc. These are simply examples to show the level of particularity the new topics should include in order to reduce the type of ambiguity and guesswork which resulted in the present dispute.

The Court is hopeful that crafting detailed notice topics will be more effective than a general order to respond fully and directly. Notwithstanding, the Court reminds Defendants and their 30(b)(6) deponent that Rule 37 makes failure to answer a deposition question sanctionable conduct. Fed. R. Civ. P. 37(a)(3)(B)(i). Defense counsel's failure to adequately prepare the deponent, which includes a "cavalier" attitude towards preparation, is also sanctionable. *Cherrington Asia Ltd. v. A & L Underground, Inc.*, 263 F.R.D. 653, 660 (D. Kan. 2010). Similarly, the Court reminds Plaintiffs' counsel that Rule 30(d) allows sanctions for unreasonably harassing, annoying, or frustrating behavior during a deposition. Fed. R. Civ. P. 30(d)(2), (3). Both parties must bear in mind that "[t]o promote effective and efficient discovery regarding corporations, the spokesperson for the corporation must be informed," which requires both parties to cooperate with the federal rules and with each other. *Cherrington Asia*, 263 F.R.D. at 66.

Regarding the request for financial reports and statements, the Court has already addressed that topic above. Finally, regarding the request that Defendants pay costs and fees for the second deposition, the Court finds the request unjustified due to both parties creating barriers to accomplishing the deposition without Court intervention. Instead, the parties shall bear their own

costs for preparation and travel, if applicable, and evenly divide the cost for videographer and court reporter services between them.

## IV.    CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Compel Re: Rule 30(b)(6) Deposition of Defendants and Production of Net Worth Documents [Doc. 67] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHERMORE ORDERED** that the parties shall confer on a new amended notice of Rule 30(b)(6) deposition with discrete topics on Defendants' policies, procedures, and training manuals which provide sufficient particularity and detail (including citations to all relevant documents) to allow the deponent to readily know the full extent of his or her preparatory obligations. The same particularity and citation requirement applies to any other topics the parties agree to include. Defendants may designate a new Rule 30(b)(6) deponent if necessary. After a mutually satisfactory amended notice has been reached, the parties shall conduct a two-hour deposition over Zoom on the outstanding issues remaining from the original deposition, unless they stipulate to include other topics. Counsel and the Rule 30(b)(6) deponent shall strictly adhere to the parameters of proper deposition conduct explained above.

**IT IS FURTHERMORE ORDERED** that Defendant shall produce their most current tax returns or balance sheets, whichever is more readily available for production, to support their net worth calculations at least fourteen (14) days prior to the deposition.

**IT IS FURTHERMORE ORDERED** that Plaintiffs' Motion to Extend Expert Witness Disclosures and Related Discovery Deadlines [Doc. 96] is **GRANTED** with the following deadlines imposed:

1.  Plaintiffs' Rule 16(a)(2) expert disclosure: September 5, 2025;

2.  Defendants' Rule 26(a)(2) expert disclosures: October 6, 2025:

3.  Plaintiffs' rebuttal experts, if any: 15 days from service of Defendants' expert reports;

**4.  Termination for discovery: January 22, 2026;**

5.  Motions relating to discovery: January 29, 2026.

**IT IS SO ORDERED.**


HON. JERRY H. RITTER
UNITED STATES MAGISTRATE JUDGE